Good morning. I'm Gaston Debbie, and I represent the plaintiffs and the appellants in this case. I'd like to start by just making a brief comment on the latest submission of the case of Jonathan Neal and Associates v. Jones. Even a cursory reading of that case shows that it is totally inapplicable to the facts in this case. The Jones case dealt with basically what I perceive to be a bookkeeping error that resulted in retroactive overbilling of workers' comp premiums. This is a far cry from this case where we have a concerted conscious effort by an insurance company to cancel Mr. Bissell's non-cancelable policy. He had a period of time where he received disability benefits pursuant to a waiver based upon, in part, the medical records that this insurance company developed. Other insurance companies decided that he was not disabled, and that ensued in a bad faith trial, which the insurers prevailed on. And, Dr. Bissell, as soon as that verdict came in, this insurance company said, hey, these other insurance companies that went to trial and found that you weren't disabled for this reason, now we're going to retroactively cancel your policy unless that verdict is disturbed on appeal. That is the nutshell and the germ of this case. Whether or not that insurance company could retroactively cancel a policy where it had voluntarily waived the premium payments on, in violation of California law, which requires a 31-day grace period, because that's what the policy states he was entitled to. Proceeding forward. Now, let's see if I have my hands around the basic facts correctly. Your client had a disability income policy with this carrier, right? Correct. He became disabled, notified the company, and they made a determination that he was in fact disabled and began to do two things. Number one, waiving his premiums and paying benefits. Correct. And this went on for a period of how long? I think it went on for a period of three years, Your Honor, but I may be wrong with the exact time period. And your client had some policies with some other companies. Correct. There was the trial you described and a jury verdict found that he was not in fact disabled. Correct. And at that point, General American wrote your client and said, based on that, we want you're in default. Is that what they're saying? Yes. What they're saying is that your policy has lapsed for nonpayment of premium. But did that letter, if he had responded to that letter and paid the past premiums and began to pay premiums, would he have been reinstated under the terms of the policy? He would have had a right to be instated. That is the plaintiff's and the appellant's view on the California court, on the California law. But I think if you read the letter and the fact that they failed to even signify his request with a response, I think a reasonable jury could conclude from that that it was a done deal, that this insurance company had seized the opportunity to get rid of this insured and be done with him once and for all. And the only way that they were going to consider reinstatement of the policy, which had not lapsed according to California law, would be if he prevailed on his appeal. Now, my understanding is your client responded to the notice from the insurance company and, distilling it down to a sentence, said, send me a bill and I'll pay it. Correct. And they didn't respond. They did not respond. Subsequent to that time, he suffered another disabling condition, and he had a total heart block, complete heart block, which required the use of a pacemaker for him to continue living. He was an operating room anesthesiologist, and the equipment in the operating room would interfere with the pacemaker, making it impossible for him to perform the necessary and substantial duties of his profession. Didn't the carrier ask for a physician's statement in connection with that second claim? Well, that's interesting, Your Honor. What they did was they totally ignored that issue. What Dr. Bussell did is he took the claim form that the company had preprinted, and he sent that in to the insurance company. He said, I sent the physician's portion to my doctor to fill in and to send to you. And that's all documented in the ER. The insurance company said, sorry, Dr. Bussell, your policy lapsed. Didn't say, hey, by the way, we never received this, or we object to that. We want you to submit the claim with that portion of the claim, which then brings us into another violation of California law, which is insurance code section 553, which plainly states that when a proof of loss is submitted, if there's not a timely objection to something in the proof of loss that the insured has within his power to correct, such as running over to the doctor and saying, oh, you know, did you send this in? They really need it. You know, can I help you in any way? Can I do this? They waive objecting on that basis. And that's basically where we are in this case, Your Honor. Does the record tell us whether the doctor that your client sent the form to ever sent it in? No, the record does not tell us that. The record is absent as to whether or not the doctor sent it in. It was not contained in the claim file, and no one took the doctor's deposition. This case had a lot of events happening collaterally that distracted attention from perhaps getting all of these little issues tied up. Is there a letter in the file from the insurance company to your client, Dr. Bissell, after the 1999 heart attack, and then he sends in this? How did he get the claim form for that? He requested a claim form. And they sent him a claim form. They sent him a claim form. They didn't say, we canceled your policy back in 1997. You're not covered. No, they sent him a claim form. He submitted the claim. Okay. And then what response did he get from the insurance company to the submission of the claim? The response he got was a letter saying, your policy lapsed. And where is that letter in the file? I don't know. But they sent him a letter. Yes. Which is in the file. Yes. And the letter said, well, it's lapsed. Maybe that was the one where it said we were all going to wait until your other cases went up on appeal to see what happened to them. I think both letters said that, Your Honor. My recollection is correct. I think the second letter that you're referring to also said, by the way, you know, the jury found you not to be disabled. So, therefore, this resulted in your policy lapsing because you didn't pay your premiums. It doesn't mention the fact that they had waived payment of those premiums. And your latest claim is denied on the basis that your policy lapsed. Quinn and O'Connor, have those other cases been affirmed on appeal by now? No. They're still on appeal? Right. Yes. Okay. But the company never told him we are declining to pay for your 99 heart attack because you did not present a full proof of loss. They never told him that. Not until this lawsuit was filed. I know that justice sometimes moves slowly, but how could they be pending that long? Well, I can give you chronologically, the policy was terminated in December of 97. And the claim was made in April of 99. No, but I mean the cases that were even found to have made a false claim. Is that case still pending? No. That is finally resolved. His appeals were denied. First by this court, and then he sought a review by the Supreme Court, which declined. When did that happen? That happened, I believe, in 2000. So that was a federal case for some reason. Yes, it was a federal case. Same reason this is a federal case, Your Honor. Diversity of jurisdiction. And that's the plaintiff's case in a nutshell. The trial court did not rule on the issue of whether or not the company committed bad faith or whether or not there was sufficient evidence for punitive damages, simply stating that she felt that the policy did lapse for nonpayment of premiums, and therefore there was no coverage and did not need to go into those issues. I'd like to reserve some time to address those issues if they're brought up. Sure. Thank you for your argument, counsel. You're welcome. We'll hear from the carrier at this time. Mr. Oster? Good morning, Your Honor, and thank you. And I'm glad to hear that that last issue was cleared up. The underlying case that went to trial back in 1997 where the jury verdict came in, I happened to be trial counsel on that case. It was for different insurers, but that was indeed not only affirmed by the Ninth Circuit, but then the petition for certiorari was denied. And that's ancient history. At this point, there is nothing pending with respect to that or the determinations that were made by the trial court in that case. When did that occur? Was it 2000? It was in the year 2000, Your Honor. I actually have it. It's cited in our brief in the opening section. The specific timeframe is given on that. If I may, Your Honors, what I would like to do is to focus on something which I think really as I stand back and look at the briefs hasn't really received the attention that it deserves, and I think it's a very straightforward issue. And I apologize for not giving it this emphasis before, but we all know that insurance costs money, and without payment of premiums there is no insurance. And in this particular case, we wouldn't be here, of course, if there was the simple payment of the premium either on a go-forward basis or potentially even a tender of the premiums during the waiver of premium period. And the question at this point is, I mean, that's a fact. There was never a payment of premium, never a tender of the payment of premium. And what really is the ramification of that undisputed fact? I think the response your opponent either has or would have to that, and I'd be interested in your rejoinder, is that when he received the notice, he wrote back and said, I'm prepared to pay, send me a bill, and they didn't. And that under California law, because they had established a practice of sending premium notices, he was entitled to some response. Let's hear from you on that. All right. First of all, with respect to the requirement or the practice of sending a premium notice, I don't think that's been established in this case, but let's assume for discussion purposes that it has been. The purpose of sending a notice for premium is to do just that, provide notice, to let somebody know what is the amount that is due. In this case, there is no doubt, as found by the trial court, as to the amount due or when it was due. It was specified in the policy. So to the extent that they want to rely upon, well, we couldn't pay or we were somehow prevented because of a lack of notice, is wishful thinking at best. And the trial court made a specific finding against that in saying that the fact that you didn't receive notice certainly didn't prevent you. And that leads me, Your Honor, to the point that I was going towards, and that is with respect to the nonpayment of premium, we know that if there's no payment of premium, unless excused, there's no insurance. So is there an excuse for nonpayment? Well, do we have grounds for estoppel? That would be a typical basis. And that's kind of hinted at at many different places within the opening brief and in the reply brief of the appellant. But what type of detrimental reliance? What did the appellant not do as a result of some representation or misrepresentation? The grounds aren't there because they knew at all times what was required. Is it in the practice of your client to send premium notices? I believe routinely back in 1992, on a once annual basis, premium notices would be sent. I believe that, but that's not in the record, Your Honor. I can tell you this, that it is explicitly not required in the policy. And I can also cite you to California. Is it California law that if, whether it's in the policy or not, that if the carrier establishes a practice of doing that, the insured can rely upon it? I think that the insured can rely upon it, Your Honor. But I want to choose my words very carefully. Can rely. Because that's what I was talking about, estoppel, just a moment. In this case, there was no reliance. He didn't say there has been no evidence to say, geez, I would have paid, but I didn't know the amount. He responded to the letter. When did it come? December what? The date of the letter you refer to, Your Honor, I believe is December 11 of 1977. Well, December 3rd is the letter from the carrier. Yes, Your Honor. And he responds eight days later. Yes, Your Honor. And the essence of that response is, I'm ready to pay. Send me a bill. I agree with you, Your Honor, that that's a fair characterization of what that letter says. But at best, that is a promise to pay, an offer to pay. It's not actual payment. And what that leads to, Your Honor, I do want, I don't want to get away from an issue. I want to come back to the waiver thing, to the waiver concept. That was the second point that I wanted to make. But let me first. Let's play this out. I want to, one of the purposes of this exchange, especially with good counsel, and you certainly are that, is to sort of let you know what's bothering me. It may bother the other judges. We don't confer a prior argument. And then you can tell me where my thought patterns on this are wrong. We're required, since this is a summary judgment grant, to view the evidence in the light most favorable to the doctor. And his contention, as I understand it, is that this exchange of letters, the letters saying you've got to pay premiums, including past premiums, and his eight-day-later response saying, I'm ready to pay. Send me a bill. And then they don't send a bill. Why isn't there a material question of fact that can't be resolved on summary judgment as to that precise issue? That's what's bothering me. Okay. And let me try. And if I get off that issue, please yank me back. Because I do want to address exactly what's on your mind here. If you take a look at that exchange, what the attorney for the insured is saying at that point is that you send us a bill and we will pay it. And what is the consequence of the fact that nothing was sent? Did that excuse the obligation to pay? Because that's the fact that we're left with. There wasn't a response to that. Did the letter, alternatively, did the letter from the attorney to the insurance company create an obligation to send out a billing statement? And the answer is it didn't. And that's why I was talking about the concept of estoppel. What information was the insured somehow. How can you say it didn't create that obligation? A request for a billing, I'm not aware, Your Honor, for two reasons. I'm not aware of anything in the policy or anything in California law that says, or any law, period, that says. It's because the insurance company didn't have to. That's correct, Your Honor. But, I mean, let me be very specific about that. A request for a bill and the failure to send a bill does not, and I want to take it to the logical conclusion, does not excuse the duty to pay. That's the issue here. And it's really not so much of a factual issue, Your Honor, as it is a legal issue. I believe that if there was some conduct, because the background for all of this is there was nothing, the record does confirm this, there was no conduct, there was nothing that prevented the insured, whenever the insured wanted to, to simply write out a premium check for exactly what was specified in the policy schedule. No doubt, no mistake. He didn't have to include the last five years, or he could have out of an abundance of caution. For how much, Mr. Oster? It's set forth in the policy schedule. Yeah, but, I mean, when looking at that letter of December 3, they said since you have not paid the premiums and were not entitled to a waiver, the policy has lapsed. That sounds as if they're saying we're lapsing it right now, you have a duty to reinstate under your policy, which would be the 31 days that Michael talked about. I agree. Yes, Your Honor. And in that period of time, you would have to pay all of the premiums that were waived for a long period of time. That's one interpretation, Your Honor. And worst case analysis, what he would have to do is to go back, because it's all specified year by year in the policy, exactly how much you pay. And worst case analysis, he would have to tend to the check for that. But what it's meaning is, look, we waived the premiums before on this basis. Those are gone. Yes. But now you're going to have to pay premiums, and the policy says you have to. And frankly, Your Honor, I believe that to be the case, and as a matter of fact, the district court did as well. Okay, but isn't that a pretty good lead-in then for the letter saying, hey, tell us how much we have to pay? In other words, are you, insurance company, saying we've got to go back and pick up all those premiums that were waived? Or are you saying we now pay from here on? Please tell us which it is. The insurance company doesn't answer because they take the position your policy is lapsed, period. We're not telling you anything. And what I would point out in that regard, Your Honor, is this, is that we are speculating at this point in time. We are speculating as to whether or not there was any genuine confusion or any confusion at all on the part of the insured. We are speculating as to why is it didn't they pay? And let me point out this very important what if. And I really hesitate to get into what ifs, but it does illustrate the point here. The situation that we have, actually it's not a what if at all. It is the actual factual situation we have where the insured chose, voluntarily chose to do nothing, to make no payment. Now, the question at this point in time is for what period of time? Do you go one year, five year, ten years? What if 15 years down the road there's been no tender of premium and now he's reached age 65 where the policy ends? Is he going to retroactively send in a premium at this point in time? No, he's not going to. The point that I'm trying to make is that under the scenario as viewed by the insured that I'm excused from payment because I said send me a bill and you didn't send me a bill, so I have insurance indefinitely. The case would be cleaner if the insurance company had replied, right? Unquestionably, Your Honor. I'm dealing with the facts that we have, and if you wanted to ask... Everybody who's ever practiced law will say it's true. Unquestionably, it would have been, Your Honor. Now, there was this other letter about, well, you've told us, the company says you've told us that your other cases are on the field, so we'll wait and see how those turn out, and I can't remember... I can cite you to that, Your Honor. That was a July 23, 1999 letter. It is found in the excerpts of record, Your Honor, at page 103. Okay. Well, let's take a look at that. There it is. Okay. And I think what you want to look at, Your Honor, I believe, is the second page, second paragraph, I think. Right. Given the fact your policy was lapsed, and you're currently appealing the decision which resulted in the lapsing, so they're saying the policy was lapsed because of the other cases, not the nonpayment. Well, I don't know what they're saying. We must await the verdict of your appeal before we can give your potential claim our further attention. Now, this is July 1999, and when did he have the heart attack? I don't know when he had the heart attack, but he claimed that the pacemaker was – I'm sorry. He stated that the pacemaker was put in February of 1999. So this is – he's got another claim. Now they've got – they've had this other claim going on, I guess, for the alleged heart attack. Right. And they're saying, well, you know, before we do anything, we want to find out what happened on those other cases. Yes. And may I explain something about that, Your Honor? Yes. Because I think that this is subject to confusion or misunderstanding potentially, and I want to be very clear about it. What the insurance company is saying here is this. We have taken the position, as we already described to you in our December 3, 1997 letter, that your policy lapsed because of the jury verdict in the case and so forth. Right. But you tell us that you have an appeal and it's ongoing and so forth. We may be wrong. If the jury verdict is upset by the court of appeal – this body, as a matter of fact – and it turns out that you were disabled, then you're entitled to waiver of premium, and then – that's why they call it potential claim. Then we will give the current claim for the retention. But all they're saying there is that the basis for the lapse, i.e., you're not disabled, the jury finding, hence you're not entitled to a further waiver of premium. All they're saying here is, if that gets upset on appeal, then we have to look at things again in light of what the appellate body does. That's all it's saying. It's not saying, don't pay us any premiums, forget about our December 3, 1997 letter. It says none of those things. It simply says, we recognize that you have an appeal of the adverse jury verdict and will have to be guided accordingly if it upsets our previous analysis. And I think that's all that it says, Your Honor. If I may conclude with this one point. Again, I look at the issue of what was it that the insured was prevented from doing in this case. Because unilaterally, the insured under this policy has the right to keep the policy forever. The insured simply has to do one thing, and that is pay the premium. This is a guaranteed renewable policy. That's part of the obligation. There's no what ifs, ands, or buts about it. And the attorney representing the claimant at the time knew that. He references it in the letter, and all they had to do was to pay the premium. At that point in time, the company would have no choice but to renew up to age 65. There was nothing that prevented the insured from doing that. Rather, I think the insured intentionally refrained from doing so and engaged in a gamble, which sets up this situation of indefinite coverage into the future. The circumstances of this case, Your Honor, although it wasn't pled for some type of excuse for equitable relief or whatever or some type of mistake, there's no mistake, there's no misrepresentation, there's no detrimental reliance, there's no waiver. What reason is there for the insured not to do the one thing that unilaterally the insured can do to guarantee coverage? And in this case, there was none. And they intentionally chose to gamble on a jury verdict being upset. Well, that gamble didn't pay off, but it also doesn't result in coverage where there was the intentional nonpayment of premium. Does the December 3rd, 1997 letter tell the doctor the company's position vis-a-vis the past waived premiums prior to that date? I mean, you've told us here that you think the company's position was that the past waiver is gone, and if he had responded immediately and paid current premiums, he would have been okay. Do I understand that correctly? Yes, Your Honor. But I say that not because the letter says that, but because of my understanding of California law. It's like making a payment under reservation of rights. That's fine. But does the letter tell him which of those two things need to be done? It does not, Your Honor. It does not. And nor is there further inquiry about that. Except his letter saying, send me a bill. Send me a bill. That's correct, Your Honor. But, again, where that discussion leads to, I agree with both the question and the answer.  Those are the facts. But where it leads to is this, is does the failure to send a bill create coverage? Particularly under the circumstances of this case, Your Honor, I would very respectfully and very strongly suggest that the answer is no. We don't have waiver. We don't have estoppel. We don't have misrepresentation. The insured at all time had within his exclusive unilateral means the ability to guarantee coverage and chose not. Are there any further questions? I don't see any. Your Honor, thank you very much. Thank you, Your Honor. Thanks, Mr. Chairman. Mr. Rebuttal. Thank you. Just very briefly, there's a couple of documents that are in the ER on pages 185 and 187 that have not been addressed that I think are very important. 185 and 187. Those documents are from the claim file, and they are a note from the adjuster to the supervisor asking what to do about sending out a notice of premiums to Dr. Bissell. And what does the supervisor do? He says, don't. Don't send that out. That shows an intent by this insurance company to not afford Dr. Bissell the opportunity to reinstate his policy as he had an absolute right to do under California law. So it's not a question of what is this insurance company doing? How can we ascertain what their intent is? What those documents show is that, number one, there is a computerized system. Number two, that there is a policy that this company has to send out premiums. And number three, that this supervisor intentionally interfered with that. Now, if that notice would have gone out and Dr. Bissell would not have paid the premiums, then I wouldn't have a leg to stand on. If Dr. Bissell would have gotten a response to his letter saying, what do I owe? I don't understand your position from your letters that I think the average person would find to be at the least ambiguous. And gotten a response and said, you owe this. And he would have said, well, I'm not going to pay it. I'm going to take my chances on the appeal. I wouldn't have a leg to stand on. But given the facts of this case, Your Honor, given California law, given what the insurance company's intent was as manifested by those two documents, I think that the trial court erred. It should be reversed and remanded. Thank you. I wanted to ask you about the letter of April 1, 1999. How long had it been since Dr. Bissell had been acting as an anesthesiologist? He had not been acting as an anesthesiologist for five years. Seven years, right? Seven years, yes. And he says he's making this claim because the spacemaker will interfere with his work as an anesthesiologist. Right. That brings us to the Amadeo case, Your Honor, which was decided by this court. Reading the policy as to what an occupation is, unemployed person is not an occupation. I mean, it would render having a disability policy when you had a period of waiver and then the policy is reinstated because the jury has found that in their opinion you're not disabled when you have met the criteria for disability that that particular insurance company has set forth for a period of five years to then say, you know, you don't have an occupation. Now that you have another disability, we're not going to pay you. But continue paying premiums because your policy is meaningless. He hadn't been paying any premiums. I understand. Go ahead. Just one last question, at least from this seat. The operative facts, was it a slip and fall, the first claim? Yes. Those operative facts in the claim we're looking at here, were they the same operative facts before the jury that found no disability? Yes. Thank you for your argument. Thank both counsel for their argument. Nope. We're done. Case just argued is submitted for decision. Thank you both. We'll proceed to the last case on the calendar, which is Prince v. SMG. May it please the court. My name is Harry Carmack. I represent George Prince.
judges: Noonan, Thompson, Hawkins